UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**DUSTON MATURIN**            **CASE NO. 6:21-CV-01690**

**VERSUS**            **JUDGE TERRY A. DOUGHTY**

**ANDREW SAUL**            **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

### Administrative Proceedings

Claimant, Duston Maturin, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits, alleging disability beginning on September 8, 2015. (Rec. Doc. 7-1, p. 183). His application was denied. He then requested a hearing, which was held on October 19, 2020, before Administrative Law Judge Lawrence Ragona. (Rec. Doc. 7-1, p. 31-56). The ALJ issued a decision on December 17, 2020, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 7-1, p. 18-27). Claimant requested that the Appeals Council review the ALJ's decision, but the

Appeals Council found no basis for review. (Rec. Doc. 7-1, p. 4). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on September 27, 1988. He was 26 years old on the alleged disability onset date and 32 years old at the time of the ALJ's decision. He last worked as a technician offshore cleaning mud tanks. (Rec. Doc. 7-1, p. 34). He alleged that he has been disabled since September 2015 due to a work incident in which he suffered a back injury resulting in a back surgery. He is also treating for depression due to the inability to work. (Rec. Doc. 7-1, p. 35-37). The medical records in the record reveal the following pertinent history:

- In a September 22, 2015 evaluation with Dr. Muldowny at Lafayette Bone and Joint Clinic, Claimant described that he had been working on an offshore boat when the leg of a tripod stand weighing 80 pounds fell onto him, causing him to fall and land on his back on a jagger pump. He complained of lower back pain radiating into the buttocks bilaterally, without numbness or tingling. He noted a previous anterior fusion at L1-2 in May 2012. He was thereafter released back to full duty in January 2013. Dr. Muldowny at first recommended physical therapy. (Rec. Doc. 7-1, p. 267-69).

- When physical therapy and pain medication failed, Claimant underwent a lumbar MRI in November 2015, which revealed either a T12-S1 right central disc extrusion with cranial migration or extruded disc fragment within the anterior epidural space, likely displacing the ventral exiting nerve rootlet and mildly effacing the right anterolateral cord without causing canal stenosis. Further there was disc pathology at the other level without acquired canal stenosis at L4-5 and L5-S1. The issue at L5-S1 was due to a disc bulge with

2

- superimposed right posterolateral disc protrusion which contacted, mildly displaced, and likely impinged the traversing right S1 nerve root. (Rec. Doc. 7-1, p. 271-74).

- A thoracic MRI in January 2016 revealed a partially imaged disc herniation epicenter left of midline at C5-6 and right paracentral extrusion with cranial migration at T12-L1. A sequestered fragment could not be excluded. There was also equivocal prominence of the central canal, borderline short segment syrinx cavity at T5-7, exaggeration of the thoracic kyphosis with multilevel Schmorl's node formation, and partially imaged discogenic edema at L1-2 with superimposed midline extension with caudal migration noted. (Rec. Doc. 7-1, p. 280-81).

- Claimant again tried conservative treatment, including physical therapy and pain management. (Rec. Doc. 7-1, p. 362-67). When that failed, in May 2017 Dr. Muldowny performed anterior discectomy for decompression of spinal nerves, anterior spinal fusion at T12-L1 with application of hardware and bone graft (harvesting of rib no. 9/left thoracotomy with exposure of T12-L1). (Rec. Doc. 7-1, p. 276-99; 312-29; 376). This was his second spinal surgery, the first having been done in 2012 after an auto accident. (Rec. Doc. 7-1, p. 303, and as mentioned in Dr. Muldowny's records generally).

- In a presurgical psychological evaluation in early 2017, Dr. Darren Strother, clinical psychologist, concluded that Claimant's psychological prognosis to proceed with surgery was classified as good. He was an appropriate candidate for spine surgery. At that time, Claimant described his mood as mostly happy. He denied symptoms of depression or prior mental health problems. At the time of his evaluation, he was driving himself and walking independently. He scored in the mostly average range on intelligence testing. (Rec. Doc. 7-1, p. 300-11).

- Following his 2017 surgery, he at first had improved mid-back pain. By August 2017, he was reporting increased pain. By December 2017, he was experiencing persistent thoracolumbar pain with circumferential numbness and hypersensitivity to touch and radiating circumferentially to the entire left paralumbar region, issues which he did not have prior to surgery. A follow up lumbar MRI revealed a small right paracentral superior disc extrusion at T12-L1 resulting in right ventral flattening of the thecal sac and mild flattening of the cord without central canal stenosis, and otherwise unchanged findings. Dr. Muldowny recommended that Claimant continue with pain management, as

there was nothing further he would recommend from a surgical standpoint. He did opine that Claimant might be a candidate for a spinal cord stimulator, but he would defer to pain management, Dr. Mitchell. (Rec. Doc. 7-1, p. 330-47).

- A February 5, 2018 Functional Capacity Evaluation was completed at Dr. Muldowny's referral. The results revealed that Claimant gave mostly maximum effort and that he was able to perform sedentary work with the ability to lift at all levels, subject to the following restrictions: carrying 20 pounds, crouching, and kneeling. He demonstrated limitations in his lumbar spine range of motion in all planes. In accordance with the FCE, Dr. Muldowny released him to sedentary duties on February 28, 2018. (Rec. Doc. 7-1, p. 348-50).

- Claimant underwent extensive pain management with Dr. Matt Mitchell at Anesthesiology and Pain Consultants beginning in 2016. Treatment included medication. He was noted as a moderate risk of controlled substance misuse. Notes beginning in mid-2017 note drug screens positive for hydrocodone and oxycodone. By May 2018, he was exhibiting depression with mood swings and excessive sleeping. He was found to be on the upper end of "moderately severe depression." He was referred to a social worker for therapy. At his most recent pain management visits in 2018, his gait was noted as kyphotic and that he had moderate difficulty with gait and transfers. (Rec. Doc. 7-1, p. 399 et seq).

- A note in Dr. Mitchell's records indicates Claimant underwent a psychological evaluation in September 2018 in which Dr. John Tracy indicated that Claimant was rated as a low risk for having a negative outcome from invasive back surgery and appeared to have a good prognosis. (Rec. Doc. 7-1, p. 443).

- A September 2018 thoracic MRI showed kyphosis without acute findings; disc disease, facet arthropathy and spondylosis; canal narrowing without acquired stenosis at T12-L1 related to right posterior lateral disc extrusion with cranial migration contouring right anterolateral cord. The radiologist reported that the issue affected the right side, but Dr. Mitchell opined that, because Claimant had left-sided pain, the nerves on the left side sustained trauma during the initial injury. (Rec. Doc. 7-1, p. 446; 449; 463).

4

- A cervical MRI in November 2020 revealed disc protrusions at C5-6 and C6-7 producing canal stenosis and multilevel foraminal stenosis. (Rec. Doc. 7-1, p. 81-82).

Claimant testified at the hearing that he can walk or stand at most for five minutes. (Rec. Doc. 7-1, p. 38). He uses a cane to walk. (Rec. Doc. 7-1, p. 42). He has not driven since his work accident and is overweight. He only lies down and watches TV most of the day. (Rec. Doc. 7-1, p. 39-41). Since his back surgery, he gets numbness throughout his shoulders into his fingertips, because a rib was removed in order to accomplish the surgery. (Rec. Doc. 7-1, p. 42-43). He continues with numbness in his legs and arms and stabbing pain into the bottom of his legs and lower back. He cannot bend down, tie his shoes, or bathe his bottom half. (Rec. Doc. 7-1, p. 44-45). He also has trouble holding things due to numbness. (Rec. Doc. 7-1, p. 48-49). He no longer takes narcotic pain medication, because he was sent to rehab for narcotic medications after his injury. (Rec. Doc. 7-1, p. 45-46).

The ALJ found that Claimant was not disabled, because he was capable of performing sedentary work, limited to one-two-three step jobs, and that a significant number of qualifying jobs existed in the national economy. (Rec. Doc. 7-1, p. 22-27). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren*

*v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. <ins>Entitlement to Benefits</ins>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives,

7

whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This

burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since September 8, 2015. (Rec. Doc. 7-1, p. 20). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: disorder of the back, obesity and depressive disorder. (Rec. Doc. 7-1, p. 20). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 7-1, p. 20-21). Claimant does not challenge this finding.

The ALJ found that Claimant was capable of performing sedentary work subject to the limitation for one-two-three step jobs. (Rec. Doc. 7-1, p. 22-26). Claimant challenges this finding.

At step four, the ALJ found Claimant was incapable of performing past relevant work. Claimant does not challenge this finding.

At step five, the ALJ found significant number of qualifying jobs existed which he was capable of performing. (Rec. Doc. 7-1, p. 26). Claimant challenges this finding to the extent he challenges the ALJ's RFC finding.

 E. **The Allegations of Error**

Claimant alleges the ALJ erred by failing to articulate a rational medical and evidentiary basis for the RFC finding, because 1) Claimant cannot perform a sedentary job on a regular and continuous basis; and 2) the ALJ failed to consider Claimant's complaints of pain. The Court shall consider these allegations of error simultaneously.

 F. **Whether the record supports that Claimant can perform a sedentary job on a regular and continuous basis due to his pain.**

Claimant challenges the ALJ's ruling on the grounds that the ALJ failed to consider that he cannot work on a regular and continuous basis due to his pain. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20

C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), citing 1996 WL 374184, *1 (S.S.A.1996). The Fifth Circuit further explained as follows:

> A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a

11

> function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work.... RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.... The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d at 620 (cleaned up).

Claimant argues that he cannot work on a regular and continuous basis due to his pain. Although pain can constitute a disabling impairment, pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985); *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19. Mild or moderate pain is not disabling. Subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not

automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence. *Id.*

Relatedly, pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision regarding the actual extent of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii).

The ALJ found that Claimant's testimony that he could not sit or stand for too long (more than five minutes) due to pain and that he had to use a cane was not supported by objective medical evidence in the record. The Court agrees. The medical evidence shows that Claimant treated conservatively with physical therapy and pain medication until undergoing surgery in May 2017. (Rec. Doc. 7-1, p. 362-67; 276-99). Following surgery, he experienced improved mid-back pain. (Rec. Doc. 7-1, p. 330-47). Although Claimant began reporting increased thoracolumbar pain in August and December 2017 (see *id.*), Dr. Muldowny released him for sedentary work in February 2018. (Rec. Doc. 7-1, p. 348-50). Subsequent medical records from late 2018 do not corroborate Claimant's testimony regarding the effect of his pain on his functionality at that time. Neither do the records show any external manifestations of debilitating pain such as weight loss or otherwise support Claimant's position that his pain prevents him from doing any level of work. Thus, the Court finds that the ALJ did not err in determining Claimant's RFC.

## **Conclusion and Recommendation**

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 6th day of October, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[1] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).